EL PUEBLO DE PUERTO RICO, denunciante y apelado, *v.* JOSÉ TORRES SÁNCHEZ, acusado y apelante.

Número: CR-64-57     Resuelto: 26 de marzo de 1965

*Yamil Galib Frangie,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Este caso se sometió por el fundamento de que la prueba de cargo—unas listas del juego de bolita—fue obtenida ilegalmente. La prueba presentada por El Pueblo, en cuanto a la comisión del delito en presencia del agente de orden público Luis A. Pacheco Torres es la siguiente:

"P. ¿Qué fue lo que motivó que lo arrestara originalmente?

R. Alteración a la paz.

P. ¿Qué fue lo que sucedió?

R. Bueno, este señor profería palabras obscenas. Le decía a una joven que no lo j . . . más, que qué carajo pasaba con Jimmy y por eso intervine con él . . .

P. Dígame, ¿allí había alguna persona en estado de demencia que estuvieran tratando de apaciguarla?

R. Ese fue el motivo, una niña de diez y seis o diez y siete años nos ordenó que nos detuviéramos . . . En eso alguien nos hizo una señal que era demente. Luego seguimos, ella [la demente] manifestaba de que nos lleváramos a Jimmy, 'Llévense a Jimmy'. Al llegar a la esquina, yo iba para casa de una sobrina y en eso fue que oí al acusado diciendo esas frases." El agente de orden público Luis A. Pacheco Torres, quien es el que está declarando, añadió: que cuando ocurrió ese pequeño suceso el agente iba a casa de una sobrina suya, a buscar un azafate, para hacer unos perniles . . . y la loca que decía que se llevaran a Jimmy; que cuando el agente oyó las palabras incluídas al principio de esta síntesis, procedió a arrestar al acusado porque "creyó que tenía que hacer ese registro porque él estaba alterando la paz".

La prueba de la defensa presentada por la señora Virginia Borrero, esposa del acusado y Rafael Cruz Rodríguez, un vecino, es la siguiente:

"R. (señora Borrero) Ese día tres de marzo, había una muchacha en el barrio que estaba loca. La única que la controlaba era yo, porque de nadie se dejaba controlar para llevarla al doctor . . . tenía yo que ir, me llamaban a mí para que yo la controlara y se rompía las ropas encima . . . Ese día cuando ella salió a la

calle desesperada—la casa mía queda en el mismo patio—yo me tiré a controlarla a ella, cuando ella empezó a hablar palabras obscenas. Al momento se reunió muchísima gente y en eso fue, cuando el revulú que ella tenía, que bajó el esposo mío . . . llegó el policía Pacheco a casa de una prima a buscar unos azafates, . . . una prima que tiene allí, entonces cuando oyó el revulú que había fue a ver lo que pasaba, ella empezó a decir que 'aquí todos venden bolipul'. El que más cerca estaba era el esposo mío y le echó mano. Ahí mismo cogió y lo registró, entonces él le dijo: '¿Por qué ustedes me registran aquí en la calle?' Ustedes no tienen ningun derecho a registrarme en la calle; que el policía lo alzó y lo entró en la poli [*police patrol*]; que la muchacha que padecía de sus facultades mentales [Ana Mirta Poche] vivía allí desde hacía más de diez años; que el esposo de la testigo no pronunció allí palabras obscenas o alteró la paz de la gente que estaba allí; que quien gritaba era loca."

El vecino Rafael Cruz Rodríguez declaró: "allí vive una joven que se llama Mirta Poche que está demente. Estaba escandalizando y diciendo palabras obscenas y estaba la señora Virginia Borrero que la cuidaba para que no le fuera a dar un golpe y la señora tuvo que irse y bajó él, Arcadio Torres, para aguantarla y cuidarla. Entonces, pues, llegó en ese mismo momento, en el revulú—en el patio había un revulú y estábamos aplacándola y llegó el señor policía e iba a buscar un azafate a casa de una sobrina y se metió en la escalera para meterse por detrás para subir para arriba, entonces la muchacha dijo: 'Todos los que viven aquí venden bolipul' y como el señor Arcadio estaba aguantándola y aplacándola y ella señaló para donde él, pero ella dijo 'todos los que viven' y el policía le metió la mano por aquí detrás y sacó unos papeles y una cuchilla y lo trajo a las malas a la poli"; que el acusado no había dicho malas palabras.

Hemos examinado varias veces las dos declaraciones prestadas con el objeto de descubrir cómo se comportan mejor los objetos dentro del juicio, y aun eliminando la regla de la preponderancia de la prueba, francamente creemos que la descripción de los hechos en cuanto al registro injustificado

que presenta la prueba de la defensa es más lógica y se ajusta más a la experiencia cotidiana que mueve la conducta social del hombre. Notamos que el Juez no resolvió el conflicto de la prueba, y al momento de resolver sobre la moción solicitando la devolución de la evidencia por registro ilegal, le da entero crédito a lo declarado por el Hon. Víctor Tomás Ramírez, Juez de Paz de Mayagüez, quien por cierto, no presenció nada relacionado con la infracción de ley (alteración de la paz por palabras obscenas) supuesta a legalizar el arresto y el registro del acusado.

El acusado resultó absuelto por la cuchilla que portaba al ser registrado—seguramente por no tener la hoja de la cuchilla la longitud que la convierte en un arma prohibida— y fue condenado a un año de cárcel por una infracción a la Ley de Bolita. El delito de jugar a la bolita, una especie de lotería popular de carácter clandestino—tal vez un grano de sal un tanto objetable en el vicio histórico de confiar en el azar de que tanto gusta nuestro pueblo—no es lo suficiente grave como para que nos sintamos inclinados a enervar nuestra vigilancia ante una posible lesión constitucional.

*Se revocará la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de Mayagüez, de fecha 14 de septiembre de 1962.*